v. Workers' Compensation Commission and consolidated with 517-0042, Cerro Cooper v. Workers' Compensation Commission. May it please the Court, Scott Kellametz here for the Employer Act. I'm not sure I have much to add with the Commission's decision. The Commission's decision reversed the arbitrator finding that the employee had failed to prove accident. The employee worked for us as a part-time bus driver. The condition alleged was carpal tunnel and cubital tunnel. The Commission made it clear in their decision that they did review the matter from a legal and medical perspective. They considered all the testimony, exhibits, pleadings. This was consolidated at arbitration with Cerro Copper Flow. And they found based on the fact that the employee had offered scant details of the repetitive nature of his job as a bus driver or the forceful activity that may be involved in bus driving, that they found Dr. Crandall's opinions more persuasive than those of Dr. Maul. Dr. Crandall was of the opinion that bus driving, especially based on the medical records that he had reviewed, would not be the cause for aggravation of employees' carpal tunnel and cubital tunnel. Can I ask you a question? Sure. It's a little more basic than that. As I read the Circuit Court's ruling, the Circuit Court found that the Commission's decision regarding the petitioner's claim against the act is against the manifest weight of the evidence and was reversed. Is that correct? Correct. Did he ever reinstate the arbitrator's decision? The answer to that is no. He didn't do it. And if he didn't do it, where is our jurisdiction to review this case? That is a question that's whether that order was interlocutory. He never did remand it back or specifically remand it back. But if it had been remanded back, the Commission, at least against act, doesn't – the first Commission decision would still have to be reviewed, and ultimately the Commission decision, which the first – We understand that, but we can't – we review the first decision. Yes. After there's a final order in the second decision. But this case was appealed immediately after the first decision. Yes. There's no remand. The Commission did not rule on any of the award of damages or awards of benefits, and neither did the judge. And absent a remand or a reversal, he could have reinstated the arbitrator's award, in which case it would be a final order because he wouldn't be sending it back. But absent a decision as to the benefits, I don't understand how we have jurisdiction here. No, that is a concern, and I don't disagree with you. I just think that the result with the Commission's decision, at least against act, is ultimately going to be the same. But, yes, I mean, whether that's an interlocutory order. Well, that may be true, even if you were absolutely correct. It has nothing to do with jurisdiction, even if they would ultimately do the same thing as irrelevant to the jurisdictional question. But while you're here in this moment proceeding on the fact that there was – we're going to listen to the arguments. Is it true that the claimant testified he was never completely free of hand pain after leaving his employment with CERO, and he'd been diagnosed with bilateral carpal tunnel prior to his employment with ACT? Yes. Is that what he testified to? Yes. Okay. But, really, we just – with the Commission decision, we don't believe it's against the manifest way. We believe the circuit was wrong. We believe there's enough. The Commission's decision was supported by sufficient factual evidence. Absent the interlocutory question, and we would ask that the Commission decision be reinstated. Thank you. Thank you, counsel. Is there anybody at the counsel table? I have a real thing. We have counsel tables, and I'd suggest counsel use them. You're in the spectator section. You're on mute. It doesn't matter. And there's four chairs at each table, folks. Thank you. May it please the court, counsel. My name is Molly Wilson. I represent the appellate CERO Copper in this case. We are here today following the circuit court's affirmation of the decision of the Commission as to the issues of manifestation date and notice with respect to claimant's alleged repetitive trauma injury to his bilateral hands. Are we going to hear the appellee? Go ahead. The issues presented for your consideration here today are whether the Commission's sua sponte determination of the manifestation date to be January 7, 2008, was against the manifest way of the evidence, and whether the Commission's finding of timely notice was also against the manifest way of the evidence. In this case, claimant worked for CERO as a general laborer for approximately 15 years, from 1991 to August 11, 2007, when he was laid off on a permanent basis. During the last two to three years of his employment, he operated an AMN machine. At arbitration, the claimant testified that he noticed his hands and wrists would ache while operating this particular machine. Claimant testified that he presented to his family physician, Dr. Eckert, on August 23, 2007, for a checkup, as he testified that he only had one month remaining of health insurance coverage following his layoff from employment. The records of Dr. Eckert demonstrate that the claimant did not have any hand complaints on that date. Six days later, however, the claimant presented again to Dr. Eckert for a follow-up of lab results, and on that date he complained of very specific hand complaints. He complained of numbness, pins and needles in both hands. Dr. Eckert recommended that the claimant undergo testing for carpal tunnel. A neurometrics testing was conducted on that day by Dr. Eckert, which revealed borderline abnormalities, with the findings being of unclear significance. Claimant testified on two occasions in the record that Dr. Eckert informed him on August 29, 2007, that he had carpal tunnel syndrome. Two days later, Dr. Eckert referred him for further testing to Dr. Glagovac, a hand surgeon, though he didn't actually see Dr. Glagovac for more than six months. After seeing Dr. Eckert, the claimant retained an attorney and signed an application for adjustment of claim on October 18, 2007. In that application, the claimant alleges a workers' compensation claim against Ciero arising from repetitive work duties with a manifestation date of August 3, 2007. The application was placed in the U.S. Postal System Address to Ciero on November 9, 2007. It was filed with the Commission on November 15, 2007. The manifestation date of August 3 was eventually amended to August 29, 2007. The amendment occurred in 2013. After the filing of the original application with the Commission, the claimant presented to Dr. Van Ryn as an independent medical examination upon request of his own counsel. Dr. Van Ryn ultimately diagnosed the claimant with stage 1 scapulonate instability and related that condition to his employment with Ciero. Can I ask you a question so we cut this in the chase? Do you want to tell us that the manifestation date of January, whatever it was, makes no sense because he already filed an application for adjustment of claim in, what was it, October or November of the prior year? And therefore, he obviously had notice of his injury when he filed the application for adjustment of claim and therefore the notice is outside of the 45-day period and it should have been dismissed for that reason. Exactly, Your Honor. I would add to that, in addition to the evidence of the application for adjustment of claim being filed, Petitioner testified himself that on the date that he initially sought treatment for these very specific hand complaints, that Dr. Eckert notified him he had carpal tunnel syndrome. He had a diagnosis on that date, he underwent testing on that date, and he underwent treatment for very specific hand complaints. In addition to the records of Dr. Eckert, the records of Dr. Ruiz that appear on page 206 of the record, Dr. Ruiz saw Petitioner on March 5 and in his note, he takes a very thorough history from Petitioner as to the onset of his complaints and the treatment he received thereafter. Dr. Ruiz stated, and I'm going to quote, because he was certain that he had acquired carpal tunnel at work, he went ahead and obtained a lawyer and plans to embark on a claim of work-related carpal tunnel. Well, we know that he signed his application on October 10, so with the history that we know from Dr. Ruiz, the Commission could have reasonably inferred that the claimant had noticed both of the fact of an injury and the relatedness of the injury to his work well prior to October 18, 2007. And looking for a date, a manifestation date prior to October 18, 2007, it's CIRA's position that August 29, 2007 is the proper manifestation date, given that that is his initial date of treatment, his date of testing, and that Petitioner testified Dr. Eckert informed him on that date he had carpal tunnel syndrome. With August 29, 2007 being our position of the proper manifestation date, it is our position that the claimant did not give timely notice of his accident. The claimant testified at arbitration that he did not notify CIRA Flow of his accident while he was employed there up until the time that he was laid off on August 11. The proof of service of the application demonstrates that the application was placed in the mail to CIRA on November 9, 2007. Consistent with the application, Joe Grana, the manufacturing support manager for CIRA, testified at arbitration as to when CIRA received notice of the accident. He testified that CIRA received notice by virtue of the application for adjustment of claim, which he stated would at the earliest have been November 9, 2007, when the application was placed in the mail to CIRA, and November 14, 2007. So, in the event that this Court were to find the appropriate manifestation date was August 29, 2007, with CIRA Flow having notice at the earliest of November 9, 2007, that falls well outside of the 45 days to be given timely notice. CIRA Flow also likes to note that in this case, the claimant amended his manifestation date from August 3 to August 29, 2007. And CIRA, in doing so, CIRA believes that the claimants got it right. The claimant got the August 29, 2007 date right, as certainly that was in line with the proofs and that was in line with the precedent of the manifestation standard. However, unfortunately, the Commission got it wrong. In this case, however, the August 29, 2007 date was not only proffered on the amended application for adjustment of claim, it was also the date upon which claimant placed on the request for hearing as the date of the accident. It is also the date that the parties were operating as the date of the accident during the entirety of trial. It's CIRA's position that the claimant should not now be able to allege on appeal that that date was incorrect when that was the date that they have asserted since 2013. In that case, the CIRA finds the case of White v. Illinois Workers' Compensation Commission to be instructive. And in that case, this Court noted that the claimant cannot argue one date before the Commission and then obtain a reversal on appeal by asserting a completely different date. In this case, essentially the claimant requests or the claimant is alleging that the employer could be aware of a work-related injury prior to the employee. And that proposition is simply nonsensical in our position. Ultimately, Your Honors, we take the position that the record demonstrates that an opposite conclusion to the Commission's finding of the manifestation date was and is clearly apparent. And as such, it's sui sponte selection of the manifestation date was against the manifestation of the evidence. We believe there is ample evidence to demonstrate that August 29, 2007 is the proper date of accident in this case. And on that basis, we ask you to reverse the decision of the Commission. Thank you. Counsel? Counsel, you may respond. Counsel, you want to talk first of all about whether we have jurisdiction to hear the F case? I'm sorry, Your Honor, what was that? Do we have jurisdiction to hear the F case? Honestly, Your Honor, I'm not sure. I would have to think that given the circuit court neither remanded or reinstated, it makes it a little bit murkier on that aspect. So, to be quite honest, I don't have an answer for you. Good afternoon. My name is Dan Broombaugh. May it please the Court, those in counsel, I represent the employee, Eddie Andrews, in these two cases. First, with regard to the case against ACT, I believe the Commission's decision was against the manifestation of the evidence, and the circuit court was correct in reversing it. Regarding the case against Cerro Copper, the Commission's decision with regard to the manifestation date and notice was correct. Well, how do we get that when August 29 was the date that the claimant himself said was the date of the accident? Well, Your Honor, I think whenever you file an application for an adjustment claim and you use the August 29, 2007 date, you're filing a notice of a possible injury. I don't think he can know with any certainty or it can be plainly apparent that he has an injury and that that injury is related to his injury. Well, what happened on August 29, 2007? Is that the date he first sought the medical treatment? That was the day he presented to his family physician and underwent what was called a neurometrics test, which is not a nerve conduction study, which is technically a study to confirm carpal tunnel. And what did his doctor say? His doctor said the results were inconclusive, essentially. The results, it says abnormal and of unclear significance. But he was referred, though, for additional treatment, right? Correct. He was referred to Dr. Globovac, who diagnosed the employee with what he described as an aberrant form of carpal tunnel and specifically said he was not going to comment on whether that carpal tunnel was related to his employment. So up to that point, we may have had a diagnosis. It was a murky diagnosis at best. And up to that point, no doctor and apparently the employee himself was not clear on whether it was related to his employment. Well, a formal diagnosis is not necessary, is it? That's correct. I agree that a formal diagnosis is required, but I would also say that it must be plainly apparent to the employee that it's related to his employment. Hold on a second. I don't understand how you can possibly have a manifestation date after the date of the filing of an application for adjustment claim. That makes no sense. I would agree it's somewhat difficult to wrap your head around, but the way I would couch it in terms of, especially with repetitive trauma claims, is since they're so complicated and it's unclear on what exactly the date is, specifically with regard to the conditions themselves, it's hard to nail down. It's not a question of the date of manifestation when you file your application for adjustment claim. It's a question of whether a reasonable person would have been placed on those. Number one, he was injured, and number two, it was caused by his employment. We'll worry about later when it was manifested, but once he's in possession of both of those things, then he files an application for adjustment claim. At some point in time, he became aware that he was injured, and number two, as a reasonable individual, he was placed on inquiry as to whether that injury was caused by his employment. What date was that? I would say it's January 7, 2008. Then how did he file an application for adjustment claim in November? I don't think that meeting with an attorney and filing an application for adjustment claim necessarily means that the employee knows or it's plainly apparent that he has a condition and it's related to employment. I think it's absolutely illogical to say the opposite. I guess it makes no sense. But don't take that to heart. So what happened on January 7, 2008? Is that when Dr. Van Ryn gave his opinion? Where did this January 7, 2008 date come from? That's the first day that a doctor had officially opined that whatever condition Mr. Andrews had was actually related to his employment. And that's what the commission sees done? Correct. Okay. And that's how I see this one. So I think first I want to just briefly go through the ACT case with regard to the commission's decision that there was no accident arising out of and in the course of his employment. I believe that the evidence showed that that was proven. I believe it was proven objectively and subjectively. Wasn't he diagnosed with bilateral carpal tunnel prior to even starting to work for ACT? He was. And I think that actually helps the case. He actually underwent a nerve conduction study almost shortly before starting his employment with ACT. The results of that nerve conduction study were mild neuropathies at the, I believe at just the wrist. And in 2013, four years after driving with ACT, he underwent another nerve conduction study, which showed moderate to severe neuropathies at both the wrist and the elbow. And that's before he worked for ACT? That is after he started working for ACT. So 2009 was before he started working for ACT. He has mild neuropathies at the wrist. 2013, he has moderate to severe neuropathies at the wrist and elbow. Who's Dr. Crandall? Dr. Crandall is the ACT IME physician. And Dr. Crandall was of the opinion that basically everything was caused by serocon. And the commission accepted his testimony, did they not? They did, correct. So how do you overcome that? I think Dr. Mall's testimony is just simply more credible. And I think Dr. Crandall's opinions are against him. But do we substitute our finding and credibility for that of the commission? I agree. That's an issue for me on this case. That's like jurisdiction. That's a substantial issue. I agree. Okay. Again, when it comes to whether he suffered an accident or rising out of it in the course of his employment with ACT, the employee also testified that when he was driving, he had increased symptoms and symptoms that he never had leading up to this point. He had to shake out his hands because they were tingling while he was driving a bus. And he also started having pain in his elbows, which only happened when he drove a bus. That did not exist prior to his employment with ACT. Nevertheless, didn't the commission finally claim that he failed to offer testimony regarding the condition of the bus, power steering, the number of stops, driving, all those conditions? It was not in evidence, right? That's correct, Your Honor. And I honestly don't know how much that makes a difference in the case because he was a bus driver. And according to Dr. Mall, driving a bus is like one of the top reasons and causes for carpal and cubital tunnel. So I don't necessarily know the condition of the bus and whether it would actually cause any issues or relate to the causation itself. So I think, ultimately, the employee proved that he actually suffered an accident or rising out of it in the course of his employment with ACT. And the commission's decision was therefore against the manifesto of the evidence. With regard to this error decision, we've somewhat discussed the proper manifestation date somewhat already. And I would like to also emphasize that up to the January 7, 2008 date, which the commission found was the date of accident, it wasn't even clear what condition the employee had. So I think it's hard to pin down a date before that because there were differing opinions on what condition he actually had and there had been no discussion of whether it was related to his employment. And both are required, I think, for the manifestation date, especially when the case law emphasizes that fairness and flexibility is an aspect that's examined when determining the proper manifestation date. So I think the commission got that right. I think that aspect of the commission's decision should be affirmed. However, I would say that the PPD aspect of the commission's decision is problematic, especially when you look at it in terms of what they decided with the ACT case. So initially, the arbitrator in this case awarded 6.5% PPD for the left hand and 8.5% PPD for the right hand. And that was based on what the arbitrator said was unoperated carpal tunnel. So the commission came in and awarded in addition to that, and that was on the serocopper case specifically. So when the commission came in, what they did was they took the TTD that was awarded in the ACT case and moved it over to the serocase. Well, that TTD was post-surgical off work time from the employee. And the commission in the ACT case said and adopted the opinions of Dr. Crandall. Dr. Crandall said that those surgeries were related to the employment with serocopper. So now we have a serocopper case where there's unoperated carpal tunnel PPD, which was never increased because the surgery wasn't awarded as far as PPD, as far as I can tell. And then the cubital tunnel is just hanging out there. There's literally no award for that. The commission in the ACT case adopted Dr. Crandall's opinions. Dr. Crandall, his opinion was that the surgery, and clearly the commission agreed the subsequent time off was related to the employment with serocopper. So my question is, where's the PPD for that? It's not addressed in either decision. And I think by not increasing the PPD and not addressing the cubital tunnel PPD, that was against the manifest weight of the evidence. And I think that aspect of the commission's decision should have been and was reversed and that was correct on the part of the circuit court. Thank you. I just wanted to point out, we were talking about Dr. Crandall's opinions with regard to his comparison of those nerve conduction studies. And Dr. Crandall actually said that those 2009 nerve conduction studies that was right prior to ACT showed mild to moderate, and that the 2013 showed moderate carpal tunnel, and that they're still difficult to compare just because they were done at different labs. I believe Dan had said that they were mild and then at moderate, so it looked like his work at ACT actually increased the symptoms or the objective carpal tunnel. But if you look at Dr. Crandall's opinions and you look at the evidence, I would disagree with that. And really, I guess that was the only thing I wanted to say. So thank you, Your Honors. With respect to the claimant's contention that he could not have been aware of a condition when the various physicians gave different diagnoses, I think to do so ignores the line of cases that speak of a definitive diagnosis not being required. I also think that it ignores the fact that when claimants saw Dr. Eckert on August 29, that Dr. Eckert, as claimant acknowledged at two points in time in the record, he was diagnosed with carpal tunnel syndrome. Claimant also contends that because there were different diagnoses is also disingenuous because the January 7, 2008 date that they are now a proponent for, on that date, Dr. Van Ryan diagnosed him with scaffolding instability. That's not the condition that he filed his amended application for or sought benefits for or is asking people to pay for. He is asking the respondents in this case to pay for carpal tunnel syndrome and the treatment related to that. So why place a manifestation date on a date in which the condition was not actually the condition for which we're here for? Assuming that we take the position that you cannot logically have a manifestation date subsequent to the date of filing your application for adjustment claim, which I think logically follows. In this particular case, he signed the application for adjustment claim on October 18, 2007, and they got notice somewhere between November the 9th and November the 14th, both of which dates fall within the 45 days. So what you're saying is in order to dismiss this, we have to find that his manifestation date actually occurred on August the 29th, but no doctor had connected it by that date. They were examining it. They had connected it, no doubt. On October the 18th, this man, number one, knew he was injured, and number two, was placed on notice that may have been caused by his employment. That's why he filed an application for adjustment claim. But who's to say that that occurred prior to October the 18th? Well, that's a very good point, but I think Dr. Ruiz's history and the extensive history that he took from claimant in this case shows that the petitioner was convinced prior to October 18 that he had not only Carpal Tunnel Syndrome, but that Carpal Tunnel was related to his work. Is that in one of his reports? Yes, that's on page 206 of the transcript, Judge. And what does it say again? It says that, and I'll quote it specifically, he says, quote, because he was certain that he had acquired Carpal Tunnel at work, he went ahead and obtained a lawyer and plans to embark on a claim of work-related Carpal Tunnel. And what was the date of that report? It is March 5, 2008, and in that he takes, like I said earlier, an extensive history from the very onset of his complaints throughout his treatment that he received thereafter. I don't think anyone disputes that, but the question becomes, how does that become August the 29th as opposed to October the 16th, October the 15th, October the 14th? Ruiz doesn't say when he came into this realization. It's just that he came convinced. No question he was convinced. He filed an application for adjustment claim. But who places it outside the 45 days? Well, there is no particular opinion in the record from a physician that places it outside the 45 days. Our position is that because the evidence demonstrates that he formed both the belief of the fact of the injury and its relatedness to his employment prior to October 18, that we must look then to a date prior to October 18, 2007, in which to find the appropriate manifestation date, one that is both well-founded in the facts and consistent with the precedent of manifestation date. Because we know that, like I said, that he had formed that date before that, we must look to a date before that. And in doing so, we believe that the only conclusion is August 29 of 2007 because it is in line with the precedent in which courts have consistently found the date of treatment to be an appropriate manifestation date. Not only did he undergo treatment, as I indicated earlier, he underwent testing, and his family physician informed him that he had carpal tunnel syndrome. The history from Dr. Ruiz is instructive in that it paints a picture of what the claimant, his impression or his understanding was following that treatment visit and what propelled him to go seek an attorney on October 18, 2007. Thank you. Well, I guess everyone, we're all in. Thank you, counsel, for your arguments in this matter. It will be taken under advisement and written dispositions shall issue.